UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                     :   10 Civ. 0822 (RJS) (JCF)
                                    :   10 Civ. 5355 (RJS) (JCF)
          Plaintiff,                :
                                    :       REPORT AND
    - against -                     :       RECOMMENDATION
                                    :
DOC WARDEN GRVC, et. al,            :
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - -:
MICHEL TOLIVER,                     :
                                    :
          Plaintiff,                :
                                    :
    - against -                     :
                                    :
P.H.S. CORP. AND MENTAL HEALTH-     :
KEPPLINPHILLIPS, et al.,            :
                                    :
          Defendants.               :
- - - - - - - - - - - - - - - - - -:

TO THE HONORABLE RICHARD J. SULLIVAN, U.S.D.J.:

    Michel Toliver brings these actions pro se under 42 U.S.C. §
1983 ("Section 1983") against the New York City Department of
Correction ("DOC"), DOC Commissioner Schriro (the "Commissioner"),
the DOC Chief of Department (the "Chief"), Warden Mulvey, Warden
Duffy, Warden Donovan, Correction Captain Cavalli (sued herein as
"Captain Cavelli"), Correction Caption Merced, Correction Officer
Stultz (sued herein as "C.O. Schultz"), Correction Officer Smith,
Correction Officer Cherry, Captain Caputo, Captain Gates,
Correction Officer Roman, Kippling Phillips (sued herein as "P.H.S.
Corp. and Mental Health -- Kepplinphillips"), Correction Officer

1

Bond, and Correction Officer Cabble.   Mr. Toliver asserts that he was assaulted by correction officers on two occasions and that he was deprived of due process with respect to his infractions and placement in enhanced security status.   The defendants now move for partial summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure.   For the reasons that follow, I recommend that the defendants' motion be granted.

Background

Mr. Toliver's claims arise mainly out of two alleged assaults[1] and two disciplinary hearings that adjudicated his infractions and resulted in his placement in enhanced security status.[2]

----

[1] Initially, claims arising out of the two incidents proceeded as two separate cases.   Claims arising out of the December 11, 2009 incident were alleged in No. 10 Civ. 822, and the claims arising out of the May 20, 2010 incident were alleged in No. 10 Civ. 5355. On August 23, 2012, the Honorable Richard J. Sullivan, U.S.D.J., consolidated the two matters.   (Order dated Aug. 23, 2012, Docket no. 124).

[2] Rule 56.1 of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Civil Rules") requires a motion for summary judgment to be accompanied by a statement of the material facts that the movant believes undisputed, with citations to admissible evidence.   Local Civil Rule 56.1(a) & (d).   The party opposing summary judgment must submit, with his opposition, a statement responding to each of the proposed undisputed facts, also with citations to admissible evidence.   Local Civil Rule 56.1(b) & (d).   The plaintiff did not submit a Local Civil Rule 56.1 statement with his papers opposing the defendants' motion.   Nevertheless, district courts have "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and a court "may in its discretion opt to 'conduct an assiduous review of the record' even where one of the parties has failed to file [a Local Civil Rule 56.1]

A.   <u>December 11, 2009 Incident</u>[3]

The first alleged assault occurred on December 11, 2009, while Mr. Toliver was in custody at the Robert N. Davoren Complex ("R.N.D.C."). (Amended Complaint ("Am. Compl."), ¶ II.C. at 2).[4] He alleges that Captain Cavalli came into his cell at approximately 1:00 a.m., verbally assaulted him, grabbed his walking cane that had been issued for medical reasons, and assaulted him with the cane. (Supplement to Amended Complaint ("Am. Compl. Suppl."),

_____

statement." <u>Holtz v. Rockefeller & Co.</u>, 258 F.3d 62, 73 (2d Cir. 2001) (quoting <u>Monahan v. New York City Department of Corrections</u>, 214 F.3d 275, 292 (2d Cir. 2000)). Where the court's independent review of the record yields evidence contrary to a given assertion in the moving party's Local Civil Rule 56.1 statement, or where a party fails to support an assertion by citing admissible evidence, the court may reject that assertion. <u>Id.</u> at 73-74. Conversely, where the moving party's Local Civil Rule 56.1 statement is not contradicted by the court's review of the record, then the party's assertions will be "deemed admitted as a matter of law" for the purposes of a summary judgment motion. <u>Chitoiu v. UNUM Provident Corp.</u>, No. 05 Civ. 8119, 2007 WL 1988406, at *1 & n.1 (S.D.N.Y. July 6, 2007) (granting summary judgment against <u>pro se</u> plaintiff who failed to respond to defendant's Local Civil Rule 56.1 statement of facts). My review of the record did not reveal any facts to contradict the relevant facts in the defendants' Rule 56.1 Statement. Therefore, I have taken those facts recited below as true.

[3] Mr. Toliver refers to the date of the incident at issue in the 10 Civ. 822 complaint as December 11, 2009, December 12, 2009, and December 15, 2009, at various points during his deposition and in his complaint. In the interest of clarity, I will refer to this single incident as the December 11, 2009 incident.

[4] For the sake of clarity, I will refer to the pages in Mr. Toliver's Amended Complaint and his Supplement to the Amended Complaint as numbered by the Case Management/Electronic Case Filing (CM/ECF) system.

attached to Am. Compl., at 12). He claims to have suffered "[b]leeding mouth, [and] injuries to [his] lower back[,] [] legs [a]nd arms." (Am. Compl., ¶ III at 7).

B.  May 20, 2010 Incident

The second assault occurred on May 20, 2010, while Mr. Toliver was in custody at George R. Vierno Center ("G.R.V.C."). (Am. Compl., ¶ II.C at 2). He alleges that after being prevented from going to court for his ongoing criminal case, he was assaulted by Captain Merced, Officer Stultz, and Officer Smith, then taken to the "decontamination room," where he was sodomized. (No. 10 Civ. 5355 Complaint ("5355 Compl."), attached as Exh. B to Declaration of Joseph A. Marutollo and Steven M. Silverberg dated Sept. 14, 2012 ("Marutollo and Silverberg Decl."), ¶ II.D). He alleges that Captain Merced forced him to "suck [Captain Merced's] penis and Officer Stultz urinated on [him]." (5355 Compl., ¶ II.D). They also purportedly forced "[his] head into cold water on the floor of a shower[,] trying to drown [him]," and he lost consciousness. (5355 Compl., ¶ II.D).

After the incident, these three defendants reported that force was used in response to Mr. Toliver's attempt to assault Officer Stultz with his cane. (Report and Notice of Infraction dated May 25, 2010 ("Infraction Notice #625-10"), attached as Exh. M Marutollo and Silverberg Decl.). They reported that the plaintiff

4

expressed anger about not going to court and was reluctant to return to his cell, then raised his cane in an attempt to assault Officer Stultz; Captain Merced warned him to stop, and when he did not comply, Captain Merced discharged a burst of chemical agent; the plaintiff continued to refuse to comply, Officer Stultz forced him down to the floor, and Officer Smith applied leg irons to his ankles; the plaintiff was then taken to intake for decontamination. (Infraction Notice #625-10). He was given Infraction #625-10 for the incident based on the report.

Mr. Toliver alleges that he suffered "loss of tooth, [b]lood in [] urine[,] sw[o]ll[en] ribs, [injured] elbow [], [b]ruised legs ([b]oth)[,] [b]ack [b]ruised, [] [swollen] [j]aw and cheek[,] . . . [irritated] face[,] . . . [damaged] right ear [and] swollen [l]ip." (Am. Compl., ¶ III at 7). He asserts that he never received medical care for these injuries after the incident. (5355 Compl., ¶ III). The plaintiff's deposition and medical records, however, indicate that he was treated by medical staff on at least three occasions on May 20, 2010. (Defendants' Statement of Undisputed Facts Pursuant to Local Civil Rule 56.1 ("Rule 56.1 Statement"), ¶¶ 24-25). He also received psychological treatment from Kippling Phillips. (Rule 56.1 Statement, ¶ 26). An internal DOC investigation found that the use of force was appropriate. (Rule 56.1 Statement, ¶ 28).

C.  <u>Infractions and Enhanced Security Status</u>

There are two disciplinary hearings at issue, both conducted by Captain Caputo.  The hearings concerned three infractions and the plaintiff's Red I.D. status and Enhanced Restraint status (collectively "enhanced security status").  In each hearing, Mr. Toliver was found guilty of breaking prison regulations and sentenced to punitive segregation.

1.  <u>Infractions #360-10 and #370-10</u>

The first hearing occurred on January 28, 2010, and related to infractions generated by Officer Bond.  (Rule 56.1 Statement, ¶ 8).  Infractions #360-10 and #370-10 both arose from a dispute between Officer Bond and Mr. Toliver regarding an extra mattress issued to Mr. Toliver for medical reasons.   (Rule 56.1 Statement, ¶ 8).  Infraction #360-10 charged the plaintiff with disrupting programs, refusal to obey a direct order, and disorderly conduct.  (Report and Notice of Infraction #360-10 dated Jan. 24, 2010 ("Infraction #360-10"), attached as part of Exh. J to Marutollo and Silverberg Decl.).   Infraction #370-10 charged him with making threats and disorderly conduct when Officer Bond attempted to remove the extra mattress. (Report and Notice of Infraction #370-10 dated Jan. 24, 2010 ("Infraction #370-10"), attached as part of Exh. J to Marutollo and Silverberg Decl.).

At the hearing, Mr. Toliver claimed a "failure of due

6

process," because he did not receive notice of the infractions at least 24 hours before the hearing, as required.  (Rule 56.1 Statement, ¶ 10).  Captain Caputo offered to grant him an adjournment until the following day.  (Rule 56.1 Statement, ¶ 11). However, Mr. Toliver declined the adjournment, stating, "I don't need it. I'm prepared.  I'm ready."  (Rule 56.1 Statement, ¶ 12). He made a statement and called a witness to testify on his behalf. (Rule 56.1 Statement, ¶ 13).  Captain Caputo dismissed Infraction #360-10 as unsubstantiated (Hearing Report and Notice of Disciplinary Disposition of Infraction #360-10 dated Jan. 28, 2010 ("Disposition #360-10"), attached as part of Exh. K to Marutollo and Silverberg Decl.), but found Mr. Toliver guilty of Infraction #370-10 and sentenced him to 40 days of punitive segregation (Hearing Report and Notice of Disciplinary Disposition of Infraction #370-10 dated Jan. 28, 2010 ("Disposition #370-10"), attached as part of Exh. K to Marutollo and Silverberg Decl.).

　　　　2.　Infraction #625-10

　　　The second hearing occurred on May 28, 2010, and related to Infraction #625-10 arising from the May 20, 2010 incident.  (Rule 56.1 Statement, ¶ 15).  Mr. Toliver again claimed that he did not receive the notice of the infraction against him.  (Rule 56.1 Statement, ¶ 16).  Captain Caputo offered to grant him an adjournment of at least 24 hours, but the plaintiff declined.

(Rule 56.1 Statement, ¶¶ 17-18).  Mr. Toliver then requested to call Captain Merced, Officer Smith, and Officer Stultz to testify. (Audio Recording of Disciplinary Hearing dated May 28, 2010 ("5/28/10 Recording"), attached as Exh. L to Marutollo and Silverberg Decl.).  However, Captain Caputo denied the request, stated that these officers had each submitted a report regarding the incident, and read the reports to the plaintiff.  (5/28/10 Recording).

Captain Caputo found Mr. Toliver guilty of physically resisting staff, refusing to obey a direct order, and attempting to assault staff with a weapon.  (Hearing Report and Notice of Disciplinary Disposition of Infraction #625-10 dated May 28, 2010 ("Disposition #625-10"), attached as Exh. N to Marutollo and Silverberg Decl.).  The plaintiff was sentenced to 120 days of punitive segregation.  (Disposition #625-10).

3. <u>Enhanced Security Status</u>

The May 28, 2010 hearing was also conducted in connection with Mr. Toliver's placement in Red I.D. and Enhanced Restraint status. He claims that he remains in enhanced security status to this day. (Declaration of Michel Toliver in Support of Plaintiff's Motion in Opposition to Defendants' Motion for Summary Judgment ("Toliver

Decl.") at 76).[5]

Inmates found to possess weapons while in DOC custody are assigned Red I.D. status. (Defendants' Memorandum of Law in Support of Their Motion for Partial Summary Judgment ("Def. Memo.") at 27 n.8). They wear a red identification card that alerts correction officers to their status as inmates posing a greater risk to other prisoners and correctional staff. (Def. Memo. at 27 n.8). When transported outside of the jail, they are placed in enhanced restraints: their hands are placed in black tube called "security mitts" to prevent movement; their hands are cuffed behind them with their palms facing out, then attached to a chain that goes around their waists; a box is often placed over the handcuffs in order to prevent moving or shifting. Benjamin v. Fraser, 264 F.3d 175, 181-82 (2d Cir. 2001).

Enhanced Restraint status is reserved for inmates who have committed a violent act while in DOC custody. (Directive #4518R-A: Red ID Status and Enhanced Restraint Status Due Process dated June 30, 2004 ("Directive"), attached as Exh. R to Marutollo and

---

[5] Mr. Toliver did not provide page numbers in his opposition papers. The defendants have attached Mr. Toliver's opposition papers to their reply declaration with Bates Stamp numbers inserted on each page. (Plaintiff's Opposition Paper, attached as Exh. S to Reply Declaration of Joseph A. Marutollo and Steven H. Silverberg in Support of City Defendants' Motion for Partial Summary Judgment dated Dec. 14, 2012). Accordingly, I will refer to those Bates Stamp numbers.

Silverberg Decl., ¶ III).  Enhanced Restraint status is pertinent only to inmate movement within a facility.  Benjamin v. Kerick, 102 F. Supp. 2d 157, 168 (S.D.N.Y. 2000).  Handcuffs, leg arms, and waist belts are some of the restraints that DOC may impose.  Id. The Enhanced Restraint status policy aims to reduce violence within prison, while the Red I.D. status policy aims to reduce assaults outside the prison in places like courthouses.  Id.

DOC Directive #4518R-A, entitled "Red ID Status and Enhanced Restraint Status Due Process" outlines the procedural requirements for using Red I.D. and Enhanced Restraint status.  (Directive). The Directive was initially adopted on December 28, 2000, following an order of Judge Harold Baer requiring DOC to provide procedural protections for imposing Red I.D. status.  Benjamin, 102 F. Supp. 2d at 175.  Among other provisions, the Directive requires a hearing and review of placement in Red I.D. or Enhanced Restraint status within 72 hours of service of notice to an inmate of his placement into such status.  (Directive, ¶¶ IV.A.1.a, IV.B.1.a.ii, IV.D.1).  The Directive also requires that, after the hearing, the hearing officer "document the findings of his/her review" on a form entitled "'Notice of Hearing Determination for Red ID Status and/or Enhanced Restraint Status.'" (Directive, ¶ IV.D.13).  The notice must be served on the inmate within 72 hours of the conclusion of the hearing.  (Directive, ¶ IV.D.13).

10

Mr. Toliver asserts that he was never given a hearing regarding his placement in enhanced security status. However, the May 28, 2010 hearing addressed this issue. (5/28/10 Recording). He was informed that the hearing was being conducted in connection with the imposition of RED I.D. and Enhanced Restraint status as well as Infraction #625-10. (5/28/10 Recording). When so informed, he responded, "okay," apparently acknowledging the dual nature of the hearing. (5/28/10 Recording). Captain Caputo then informed the plaintiff that he was placed in enhanced security status based on the May 20, 2010 incident. (5/28/10 Recording). Mr. Toliver was asked to give a statement, and he did. (5/28/10 Recording).

However, Captain Caputo apparently did not complete the "Notice of Hearing Determination for Red ID Status and/or Enhanced Restraint Status," as required by the Directive. He did complete the "Notice of Disciplinary Hearing Disposition," in which he found Mr. Toliver guilty of Infraction #625-10 (Disposition #625-10), but it did not contain any reference to Mr. Toliver's enhanced security status. Also, the record contains a "Notice of Hearing Determination for Red ID Status and/or Enhanced Restraint Status" form, but it only states that Mr. Toliver was initially placed in Red I.D. and Enhanced Restraint status on May 20, 2010. (Notice of Hearing Determination for Red ID and/or Enhanced Restraint Status

11

dated May 20, 2010 ("Security Hearing Determination Form"), attached as part of Exh. P to Marutollo and Silverberg Decl.). The form is unsigned, and the sections entitled "Finding of Fact/Reasons for Determination" and "Hearing Decision" are blank. (Security Hearing Determination Form).

Discussion

The defendants now move for partial summary judgment on the grounds that: (1) DOC is not a suable entity; (2) the plaintiff fails to state a claim for municipal liability under Section 1983; (3) he fails to state a claim for supervisory liability against the Commissioner, the Chief, Warden Mulvey, or Warden Duffy; (4) he fails to state a claim against Mr. Phillips, Captain Caputo, Captain Gates, Officer Cherry, Officer Roman, or Officer Cabble; and (5) the Commissioner, the Chief, Warden Duffy, Warden Mulvey, Captain Caputo, Captain Gates, Mr. Phillips, Officer Cherry, Officer Romman, and Officer Cabble are entitled to qualified immunity. The defendants also move to dismiss any claims against Deputy Warden Donovan, Correction Officer Bond, and Mr. Phillips pursuant to Rule 4(m) of the Federal Rule of Civil Procedure, any claims against the unidentified officers, and any state claims. The defendants concede that there remains a dispute of fact pertaining to plaintiff's Section 1983 claims of unreasonable force against Captain Cavalli with respect to the December 11, 2009

incident and against Officer Stultz, Officer Smith, and Captain Merced with respect to the May 20, 2010 incident. (Def. Memo. at 2).

A.   Legal Standard

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate where the movant shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute regarding a material fact is "genuine" where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party," Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); accord SCR Joint Venture L.P. v. Warshawsky, 559 F.3d 133, 137 (2d Cir. 2009), and a material fact is one that "'might affect the outcome of the suit under the governing law.'" Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008) (quoting Anderson, 477 U.S. at 248). In assessing the record to determine whether there is a genuine issue of material fact, the court "must resolve all ambiguities and draw all factual inferences in favor of the nonmoving party." McClellan v. Smith, 439 F.3d 137, 144 (2d Cir. 2006).

The moving party bears the initial burden of identifying "the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986), following which the opposing

party must come forward with specific facts showing a genuine issue for trial.  The parties can support their claims with discovery materials, stipulations, affidavits, or other evidence, <u>see</u> Fed. R. Civ. P. 56(c)(1)(A); however, "'only admissible evidence need be considered by the trial court in ruling on a motion for summary judgment,'" <u>Presbyterian Church of Sudan v. Talisman Energy, Inc.</u>, 582 F.3d 244, 264 (2d Cir. 2009) (quoting <u>Raskin v. Wyatt Co.</u>, 125 F.3d 55, 66 (2d Cir. 1997)).  Thus, the parties cannot rely on "'conclusory allegations or unsubstantiated speculation'" to support or defeat a motion for summary judgment.  <u>Jeffreys v. City of New York</u>, 426 F.3d 549, 554 (2d Cir. 2005) (quoting <u>Fujitsu Ltd. v. Federal Express Corp.</u>, 247 F.3d 423, 428 (2d Cir. 2001)).

Where a litigant is <u>pro</u> <u>se</u>, his pleadings should be read liberally and interpreted "'to raise the strongest arguments that they suggest.'"  <u>McPherson v. Coombe</u>, 174 F.3d 276, 280 (2d Cir. 1999) (quoting <u>Burgos v. Hopkins</u>, 14 F.3d 787, 790 (2d Cir. 1994)); <u>accord</u> <u>Belpasso v. Port Authority of New York and New Jersey</u>, 400 F. App'x 600, 601 (2d Cir. 2010).  Nevertheless, proceeding <u>pro</u> <u>se</u> does not relieve a litigant from the usual requirements of summary judgment, and a <u>pro</u> <u>se</u> party's "'bald assertion,' completely unsupported by evidence, is not sufficient to overcome a motion for summary judgment."  <u>Lee v. Coughlin</u>, 902 F. Supp. 424, 429 (S.D.N.Y. 1995) (quoting <u>Carey v. Crescenzi</u>, 923 F.2d 18, 21 (2d

Cir. 1991)).

B.   Section 1983

Section 1983 "is not itself a source of substantive rights, but a method for vindicating federal rights elsewhere conferred by those parts of the United States Constitution and federal statutes that it describes."   Baker v. McCollan, 443 U.S. 137, 144 n.3 (1979).   Section 1983 provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.   To state a claim under Section 1983, a plaintiff must allege that "(1) the challenged conduct was attributable at least in part to a person who was acting under color of state law and (2) the conduct deprived the plaintiff of a right guaranteed under the Constitution of the United States."   Snider v. Dylag, 188 F.3d 51, 53 (2d Cir. 1999).

C.   Department of Correction

Mr. Toliver's claims against DOC should be dismissed because DOC is not a suable entity.   See, e.g., Renelique v. Doe, No. 99 Civ. 10425, 2003 WL 23023771, at *6 (S.D.N.Y. Dec. 29, 2003) ("[T]he overwhelming body of authority holds that DOC is not a

15

suable entity."). Section 396 of the New York City Charter provides that "[a]ll actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the city of New York and not in that of any agency, except where otherwise provided by law." N.Y. City Charter § 396. Thus, as an agency within the meaning of the New York City Charter, DOC cannot be sued. Antrobus v. Department of Corrections, No. 07 Civ. 2076, 2009 WL 773277, at *3 (S.D.N.Y. March 24, 2009) ("[P]erforce of the . . . New York City Charter, DOC, an agency of the city of New York, lacks the capacity to be sued."). Mr. Toliver agrees that DOC is not a suable entity. (Toliver Decl. at 18).[6]

---

[6] On September 20, 2012, Mr. Toliver submitted a letter requesting to add allegations to support a claim of Monell liability against the City of New York. (Letter of Michel Toliver dated July 10, 2012). I denied his request. (Memorandum Endorsement dated Oct. 16, 2012). Moreover, even if the plaintiff's allegations are construed as implicating the City of New York, he has failed to identify any official municipal policy or custom maintained by the City that caused his alleged constitutional injuries. See Monell v. Department of Social Services, 436 U.S. 658, 691-95 (1978); Ezaqui v. City of New York, 726 F. Supp. 2d 275, 284 (S.D.N.Y. 2010) (explaining that for municipality to be held liable for constitutional violation under § 1983, plaintiff must prove that: "'(1) an official policy or custom . . . (2) cause[d] the plaintiff to be subjected to (3) a denial of a constitutional right'" (alteration in original) (quoting Zahra v. Town of Southold, 48 F.3d 674, 685 (2d Cir. 1995))). Monell's policy or custom requirement can be satisfied based on a pattern of misconduct that is "sufficiently persistent or widespread" as to constitute a custom of which a supervising policy-maker must have been aware. Reynolds v. Giuliani, 506 F.3d 183, 192 (2d Cir. 2007). However, "[a] single incident of unconstitutional conduct by a non-policymaking employee" of the

D.  <u>Supervisory Liability</u>

The claims against the Commissioner, the Chief, Warden Duffy, and Warden Mulvey (the "supervisory defendants") should be dismissed because these defendants were not personally involved in the alleged deprivation of Mr. Toliver's constitutional rights. "[T]he plaintiff must allege sufficient facts to demonstrate that defendants were personally or directly involved in the violation, that is, that there was 'personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal.'" <u>Harris v. Westchester County Department of Corrections</u>, No. 06 Civ. 2011, 2008 WL 953616, at *9 (S.D.N.Y. April 3, 2008) (alteration in original) (quoting <u>Provost v. City of Newburgh</u>, 262 F.3d 146, 155 (2d Cir. 2001)); <u>see</u> <u>Murray v. Koehler</u>, 734 F. Supp. 605, 606 (S.D.N.Y. 1990) ("A supervisory official is not liable under section 1983 by virtue of his subordinate's actions; rather, he

_____

City is insufficient to infer a municipal policy or custom; rather, a systematic pattern of conduct must be shown to establish municipal liability under Section 1983.  <u>Warheit v. City of New York</u>, No. 02 Civ. 7345, 2006 WL 2381871, at *12 (S.D.N.Y. Aug. 15, 2006) (citing <u>Davis v. City of New York</u>, 228 F. Supp. 2d 327, 336 (S.D.N.Y. 2002)). Mr. Toliver has failed to identify or adduce any evidence of a policy, practice, or a patter of misconduct that authorized or condoned the unlawful conduct alleged here.

To the extent Mr. Toliver is seeking punitive damages against the City, his claim fails because "a municipality is immune from punitive damages under 42 U.S.C. § 1983." <u>Newport v. Fact Concerts, Inc.</u>, 453 U.S. 247, 271 (1981).

must be shown to have 'some personal responsibility.'" (quoting Al-Jundi v. Estate of Rockefeller, 885 F.2d 1060, 1065 (2d Cir. 1989))). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a [supervisory official] in a § 1983 claim." Richardson v. Goord, 347 F. 3d 431, 435 (2d Cir. 2003) (quoting Ayers v. Coughlin, 780 F.2d 205, 210 (2d Cir. 1985)).

Mr. Toliver does not allege that any of the supervisory defendants were present or involved in the incidents at issue here. Of course, direct participation is not the only circumstance giving rise to supervisory liability. Liability may attach to a supervisor's conduct where (1) the official "'after being informed of a violation through a report or appeal, failed to remedy the wrong'"; (2) the official "'created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom'"; (3) the official "'was grossly negligent in supervising subordinates who committed the wrongful acts'"; or (4) the official "exhibited deliberate indifference . . . by failing to act on information indicating that unconstitutional acts were occurring.'" Back v. Hastings on Hudson Union Free School District, 365 F.3d 107, 127 (2d Cir. 2004) (alteration in original) (quoting Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995)). While there is disagreement within this district as to whether all of these categories of supervisory liability remain viable after

18

Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009), and the Second Circuit has yet to address this issue, the majority view is where "'the constitutional claim does not require a showing of discriminatory intent . . . the personal involvement analysis set forth in Colon v. Coughlin may still apply.'" Shepherd v. Powers, No. 11 Civ. 6860, 2012 WL 4477241, at *10 (S.D.N.Y. Sept. 27, 2012) (quoting Sash v. United States, 674 F. Supp. 2d 531, 544 (S.D.N.Y. 2009)); see also Bertuglia v. City of New York, 839 F. Supp. 2d 703, 722-23 (S.D.N.Y. 2012) (considering the five categories of supervisory liability in retaliation case); Malik v. City of New York, No. 11 Civ. 6062, 2012 WL 3345317, at *14-15 (S.D.N.Y. Aug. 15, 2012) (same).

Mr. Toliver claims that the supervisory defendants are liable based solely on their alleged knowledge of his complaints. He asserts that he wrote them letters, which were ignored (Deposition of Michel Toliver dated Sept. 27, 2011 ("Toliver 9/27/11 Dep."), attached as Exh. C to Marutollo and Silverberg Decl., at 165-66), and that he "contacted the Board of Corrections," the "Inspector General," "Reverend Al Sharpton," "the federal courts," and "Chief Judge Lorreta [sic] [Preska]" (Deposition of Michel Toliver dated March 1, 2012 ("Toliver 3/1/12 Dep."), attached as Exh. D to Marutollo and Silverberg Decl., at 167). Thus, he argues, the supervisory defendants were aware that these incidents would occur

(before they allegedly occurred).

However, simply receiving a letter regarding the complained of conduct or failing to respond does not, without more, establish that the defendants were personally involved in the alleged misconduct. <u>See</u> <u>Colon</u>, 58 F.3d at 873. In other words, "[s]imply writing to a supervisory official cannot establish personal involvement as a matter of law." <u>Walker v. Clemson</u>, 11 Civ. 9623, 2012 WL 2335865, at *7 (S.D.N.Y. June 20, 2012); <u>see also</u> <u>Davis v. City of New York</u>, No. 00 Civ. 4309, 2000 WL 1877045, at *9 (S.D.N.Y. Dec. 27, 2000) (finding no personal involvement where supervisory official ignored letter of protest and had no other involvement in alleged constitutional deprivation); <u>Pritchett v. Artuz</u>, No. 99 Civ. 3957, 2000 WL 4157, at *6-7 (S.D.N.Y. Jan. 3, 2000) (finding no personal involvement and thus no § 1983 liability where supervisory official ignored prisoner's letter of complaint).

At best, taking Mr. Toliver's allegations as true, his letters only show that the defendants were put on notice of the complained of conduct after the fact. Mere knowledge of prior conduct that amounts to a constitutional violation is insufficient to establish personal involvement. Accordingly, the defendants' motion for summary judgment should be granted as to claims against the Commissioner, the Chief, Warden Duffy, and Warden Mulvey.

E.   <u>Kippling Phillips</u>

Mr. Toliver alleges that Kippling Phillips deprived him of medical treatment by failing to contact any doctor about his injuries.  The plaintiff had received psychological treatment from Mr. Phillips after the May 20, 2010 incident.  To the extent he raises a claim of deliberate indifference to serious medical needs, such a claim fails under Section 1983.

The Eighth Amendment "establish[es] the government's obligation to provide medical care for those whom it is punishing by incarceration." <u>Estelle v. Gamble</u>, 429 U.S. 97, 103 (1976). Therefore, deliberate indifference to an inmate's serious medical needs is proscribed by the Eighth Amendment. <u>Id.</u> at 104. The standard of deliberate indifference includes both objective and subjective components:

> Objectively, the alleged deprivation must be sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain exists.  Subjectively, the charged official must act with a sufficiently culpable state of mind.

<u>Hathaway v. Coughlin</u>, 99 F.3d 550, 553 (2d Cir. 1996) (internal citation and quotation marks omitted).  To prevail, a plaintiff must satisfy both components.

Here, Mr. Toliver has not shown that he has suffered any harm -- let alone sufficiently serious harm -- as a result of Mr. Phillips' alleged failure to contact a doctor.  He does not allege

that Mr. Phillips caused him any physical injury, and he has testified that he did receive medical attention immediately following the May 20, 2010 incident. (Toliver 9/27/11 Dep. at 134). Further, even assuming that the plaintiff successfully states a claim of a serious deprivation, he has not established any connection between Mr. Phillips and the alleged injuries suffered, other than the fact that Mr. Phillips "could have contacted any doctor" but did not. (Toliver Decl. at 68). There is no evidence here indicating that Mr. Phillips intentionally acted or failed to act in a manner that directly resulted in any injury that may form the basis of a constitutional claim. Accordingly, the defendants' motion for summary judgment should be granted as to claims against Mr. Phillips.

     F.   <u>Captain Caputo</u>

        1.   <u>Claim Preclusion</u>

As an initial matter, Mr. Toliver's claims against Captain Caputo involving Infractions #360-10, #370-10, and #625-10 are barred by res judicata. Mr. Toliver had made identical claims against Captain Caputo in Case No. 10 Civ. 6666, and they were dismissed for failure to state a claim. <u>Toliver v. Department of Correction -- N.Y.C.</u>, No. 10 Civ. 6666, 2012 WL 3999316, at *6 (S.D.N.Y. April 3, 2012), <u>adopted by</u>, 2012 WL 4017298 (S.D.N.Y. Sept. 12, 2012).

"Under the doctrine of res judicata, or claim preclusion, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." St. Pierre v. Dyer, 208 F.3d 394, 399 (2d Cir. 2000) (internal punctuation omitted).  To prove that a claim is precluded under this doctrine, "a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action." Monahan v. New York City Department of Corrections, 214 F.3d 275, 285 (2d Cir. 2000) (citation omitted).  Whether a claim that was not raised in the previous action could have been raised "depends in part on whether the same transaction or connected series of transactions is at issue, and whether the same evidence is needed to support both claims." Interoceanica Corp. v. Sound Pilots, Inc., 107 F.3d 86, 90 (2d Cir. 1997) (citation and internal punctuation marks omitted).

Dismissal for failure to state a claim under Rule 12(b) of the Federal Rules of Civil Procedure constitutes an adjudication on the merits. Federated Department Stores, Inc. v. Moitie, 452 U.S. 394, 399 n.3 (1981). Further, the previous action involved identical parties and identical claims arising out of the disciplinary

hearings regarding Infractions #360-10, #370-10, and #625-10.

Even if his claims were not barred by res judicata, Mr. Toliver's claims fail because he received adequate process in valid disciplinary hearings regarding these infractions. He first claims that he never received the required notices of the infractions before each hearing. (Rule 56.1 Statement, ¶¶ 10, 16). However, in both instances, he rejected Captain Caputo's offer to grant an adjournment of at least 24 hours. (Rule 56.1 Statement, ¶¶ 11-12, 17-18). Accordingly, he cannot now claim that he was denied due process, because he waived any objection by electing to proceed with the hearings. See Aupperlee v. Coughlin, No. 98 Civ. 7245, 2003 U.S. Dist. LEXIS 24323, at *21-22 (E.D.N.Y. April 24, 2003) (no constitutional violation after inmate plaintiff had been informed of his right to 24 hours advance written notice of hearing but waived it).

Mr. Toliver also claims that he was denied his right to call the officers, who had issued him Infraction #625-10, to testify at the hearing. However, due process protection does not provide inmates right to confront and cross-examine those furnishing evidence against the inmate. Wolff v. McDonnell, 418 U.S. 539, 567-68 (1974); Kalwasinski v. Morse, 201 F.3d 103, 109 (2d Cir. 1999); Vogelfang v. Capra, __ F. Supp. 2d __, __, 2012 WL 832440, at *17 (S.D.N.Y. 2012). Accordingly, he had no constitutional

right to confront and cross-examine the officers at the hearing.

Therefore, Mr. Toliver's only remaining claim against Captain Caputo is that his due process rights were violated with respect to his placement in RED I.D. and Enhanced Restraint status.

### 2.   Due Process

To establish a procedural due process claim under Section 1983, a plaintiff must establish that (1) he possessed a life, liberty, or property interest and (2) the defendants deprived him of that interest without providing constitutionally adequate process.  Ortiz v. McBride, 380 F.3d 649, 654 (2d Cir. 2004).  A prisoner's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 482, 484 (1995).

Although courts in this Circuit have not determined whether Red I.D. or Enhanced Restraint status implicates an inmate's liberty interest under Sandin, it is helpful to look to Benjamin v. Fraser, 264 F.3d 175.  In Benjamin, the Second Circuit held that pretrial "detainees placed in Red I.D. or restraint status should reasonably promptly thereafter be accorded due process hearings in accordance with the Supreme Court's decision in Wolff[], 418 U.S. 539."  Benjamin, 264 F.3d at 190.

The district court in Benjamin had conducted substantial fact-

finding and concluded that "[Enhanced R]estraint status and Red I.D. status can prove to be a painful restraint on liberty" and "have a severe and deleterious effect on pretrial detainees tantamount to punishment." Benjamin, 102 F. Supp. 2d at 175. Further, "only a handful of the Department's inmates are placed in restraints or classified as Red I.D. inmates." Id. The court recognized that Sandin analysis did not apply to pretrial detainees and therefore did not determine whether such status imposed an "atypical and significant hardship in relation to the ordinary incidents of prison life." Id. at 172 (internal quotation marks omitted).

Here, the defendants have not argued that Red I.D. and Enhanced Restraint status do not implicate an inmate's liberty interest.[7]  Without any evidence from the defendants, and considering the factual findings in Benjamin, I cannot conclude as a matter of law that the enhanced security status did not impose an "atypical and significant" hardship on Mr. Toliver. See Wright v. Coughlin, 132 F.3d 133, 137 (2d Cir. 1998) (district court must examine circumstances of restraint to determine whether it affected liberty interest); see also Tellier v. Fields, 280 F.3d 69, 83 (2d

---

[7] Although it is unclear whether Mr. Toliver was a pretrial detainee or a sentenced inmate at the time, his liberty interest is implicated in either event. See Sandin, 515 U.S. at 484 (sentenced inmates); Benjamin, 102 F. Supp. 2d at 175 (pretrial detainees).

Cir. 2000) (<u>Sandin</u> requires factual determination regarding nature of inmate's restraints).   Furthermore, in stating that the "plaintiff was entitled to . . . a hearing in connection with his being designated as 'Red I.D.,'" the defendants apparently concede that the plaintiff had a constitutionally protected due process right to a hearing as outlined by the Directive. (Def. Memo. at 28).

Then, the question is whether Mr. Toliver received adequate due process.   The Second Circuit has concluded that the hearing procedures approved in <u>Benjamin</u> (and embodied in the Directive) "extends no further than necessary, and is the narrowly drawn, least intrusive means" to protect inmates' due process rights. <u>Benjamin</u>, 264 F.3d at 191.   Therefore, "the state violates a prisoner's due process rights if the hearing requirement of the Directives are not met." <u>Williams v. New York City</u>, No. 03 Civ. 3543, 2005 WL 1084585, at *5 (S.D.N.Y. May 5, 2005) (pretrial detainee can assert claim for violation of due process when procedures regarding hearing prescribed in Directive are not followed as to Red I.D. status).

Here, Mr. Toliver never received a written statement of the disposition, as required by <u>Wolff</u>, and as prescribed in the Directive.   The Directive provides:

The Hearing Officer shall document the findings of

> his/her review and determination as to the
> appropriateness of the Red ID Status based on a new
> infraction on the "Notice of Disciplinary Hearing
> Disposition", as required by Directive 6500, and "Notice
> of Hearing Determination for Red ID Status and/or
> Enhanced Restraint Status".

(Directive, ¶ IV.D.13). Even though Captain Caputo did issue a written disposition with respect to the underlying infraction which prompted the plaintiff's placement in enhanced security status, that disposition did not make any determination as to his status. (Disposition #625-10). And, although Mr. Toliver was provided the form notifying him of his designation of Red I.D. and Enhanced Restraint status, that form provided no rationale. (Security Hearing Determination Form). Accordingly, the plaintiff has asserted a colorable due process claim.

    3. <u>Qualified Immunity</u>

But even if Mr. Toliver has asserted a viable constitutional claim, Officer Caputo is entitled to qualified immunity. Qualified immunity shields a government officer from liability under § 1983 "if (1) his conduct does not violate a clearly established constitutional right, or (2) it was 'objectively reasonable' for the officer to believe that his conduct did not violate a clearly established right." <u>Hartline v. Gallo</u>, 546 F.3d 95, 102 (2d Cir. 2008); <u>see</u> <u>Doninger v. Niehoff</u>, 642 F.3d 334, 345 (2d Cir. 2011); <u>Farid v. Ellen</u>, 593 F.3d 233, 244 (2d Cir. 2010). Here, Mr.

Toliver received (1) notice of his initial placement in Red I.D. and Enhanced Restraint status, which referenced his assault with a cane on a correction officer on May 20, 2010 (Notice of Authorization for Initial Placement in Red I.D. Status, attached as part of Exh. P to Marutollo and Silverberg Decl.), (2) notice of disciplinary infractions for the same incident (Infraction Notice #625-10), (3) a hearing, which he acknowledged covered both the infractions and the enhanced security status that arose from the incident (5/28/10 Recording), (4) a hearing determination finding him guilty of the infractions and providing the basis for the decision (Disposition #625-10), and (5) a notice of determination with respect to the enhanced security measures (Security Hearing Determination Form).  It would have been objectively reasonable for Officer Caputo to believe that the enhanced security notice would be understood to incorporate the findings from the disciplinary hearing relating to the same incident even if those findings were not explicitly repeated.

Accordingly, the defendants' motion for summary judgment should be granted as to the claims against Captain Caputo.

G.   Officer Roman

Mr. Toliver alleges that Officer Roman falsely reported that he refused to sign notice of Infraction #625-10. Such a claim, even if true, does not amount to a constitutional violation.  Filing a

29

false report is not a <u>per se</u> constitutional violation.  <u>Freeman v.</u>

<u>Rideout</u>, 808 F.2d 949, 951-52 (2d Cir. 1986).  "[A]lthough

prisoners are entitled to be free from arbitrary action and conduct

of prison officials, the protections against arbitrary action 'are

the procedural due process requirements as set forth in <u>Wolff v.</u>

<u>McDonnell</u>.'"  <u>Id.</u> (quoting <u>Hanrahan v. Lane</u>, 747 F.2d 1137, 1140

(7th Cir. 1984)).  A hearing that meets the minimum due process

requirement can cure any false charges and preclude a suit based

solely on the filing of the charges themselves.  <u>Freeman</u>, 808 F.2d

at 953.  As discussed above, he received precisely what <u>Wolff</u>

required in the form of a valid disciplinary hearing.  Accordingly,

the defendants' motion for summary judgement should be granted as

to claims against Officer Roman.

    H.   <u>Captain Gates</u>

    While Mr. Toliver does not explicitly state a claim against

Captain Gates in the Complaint, at his deposition, he alleged that

Captain Gates "denied [his] right to go to court" on May 20, 2010,

and that "she lied [] with regard to the due process of the

generated infraction" of June 20, 2010. (Rule 56.1 Statement, ¶ 32;

Toliver 9/27/11 Dep. at 190).

    1.   <u>Denial of Access to Courts</u>

    In order to state a claim for denial of access to the courts,

a plaintiff must allege that he suffered actual injury by being

30

frustrated or impeded in bringing a non-frivolous claim about his criminal conviction or sentence, or his condition of confinement. Lewis v. Casey, 518 U.S. 343, 351-53 (1996); see also Collins v. Goord, 581 F. Supp. 2d 563, 573 (S.D.N.Y. 2008) ("In order to establish a constitutional violation based on a denial of access to the courts, a plaintiff must show that . . . the defendant's actions resulted in an actual injury to the plaintiff.").

In this case, to meet the "actual injury" requirement, the plaintiff must demonstrate that his absence from the court on May 20, 2010, prejudiced his ability to pursue a legal claim.  See, e.g., David v. Goord, 320 F.3d 346, 351 (2d Cir. 2003) ("To state a claim for denial of access to the courts . . . a plaintiff must allege that the defendant . . . was responsible for actions that hindered [the plaintiff's] efforts to pursue a legal claim." (internal quotation marks omitted)); Rodriquez v. Schneider, No. 95 Civ. 4083, 1999 WL 459813, at *28 (S.D.N.Y. June 29, 1999) (granting summary judgment for defendants where plaintiff failed to submit evidence of actual injury).  Further, if an inmate is represented by counsel, the burden to show actual injury is much higher.  See, e.g., Shepherd v. Fraisher, No. 96 Civ. 3283, 1999 WL 713839, at *5 (S.D.N.Y. Sept. 14, 1999) ("[P]laintiff cannot state a viable § 1983 claim based on the alleged denial of his access to courts when he was represented by counsel."); Perez v. Metropolitan

31

Correctional Center Warden, 5 Supp. 2d 208, 211 (S.D.N.Y. 1998) ("If an inmate is provided with legal counsel, the inmate is given a 'reasonably adequate opportunity' to present his claim and there is no violation of constitutional [] magnitude.").

Mr. Toliver has not met the burden here.  There is no dispute here that he was represented by counsel in the underlying criminal matter, and his attorney appeared on his behalf for his May 20, 2010 court date.  (Transcript dated May 20, 2010 ("Tr."), attached as Exh. E to Marutollo and Silverberg Decl.).  The plaintiff has failed to submit any admissible evidence to support his allegations that he was harmed.  Therefore, regardless of whether Mr. Toliver refused to go to court or was prevented from going, he fails to state a constitutional claim based on denial of access to the courts.

### 2.   Due Process Claims

Mr. Toliver also alleges that Captain Gates "signed the document stating that [the plaintiff] received the infraction [#625-10], when, in fact, [the plaintiff] did not." (Toliver 9/27/11 Dep. at 180).  Liberally construed, the plaintiff may be alleging that Captain Gates filed a false disciplinary charge against the plaintiff.  As in Officer Roman's case, a valid disciplinary   hearing in connection with Infraction #625-10 insulates Captain Gates from liability.  Accordingly, the

defendants' motion for summary judgment should be granted as to claims against Captain Gates.

I.   <u>Officer Cherry</u>

Mr. Toliver appears to be suing Officer Cherry for threatening him.  He alleges that Officer Cherry "was on duty the night of the [December 11, 2009] incident when [Officer Cherry] threatened [the plaintiff] the exact same night."  (Am. Compl. Suppl. at 3).

However, verbal abuse and threats of violence, even if inappropriate or reprehensible, are not actionable under § 1983, as they do not violate any protected federal right.  <u>See</u> <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986); <u>see also</u> <u>Walker v. Shaw</u>, No. 08 Civ. 10043, 2010 WL 2541711, at *12 (S.D.N.Y. Jan. 23, 2010); <u>Malsh v. Austin</u>, 901 F. Supp. 757, 763 (S.D.N.Y. 1995) (threats of disciplinary action and physical violence, from which plaintiff did not allege any injury, did not constitute constitutional violation).  Thus, the alleged statements and threats made by Officer Cherry toward Mr. Toliver do not give rise to a valid § 1983 action absent allegations of some accompanying injury.  Accordingly, the defendants' motion for summary judgment should be granted as to claims against Officer Cherry.

J.   <u>Officer Cabble</u>

Mr. Toliver alleges that Officer Cabble "opened up [the plaintiff's] cell door so that Captain Cavalli could come into

33

[the] cell to commit the crime of assault" on December 11, 2009. (Am. Compl. Suppl at 7). The plaintiff appears to raise a failure to intervene claim as he alleges that Officer Cabble "could have prevented [the purported December 11, 2009] assault from happening" because she "knew what was going to happen." (Toliver Decl. at 89). He does not provide any further evidence to implicate Officer Cabble in the purported assault.

"Officers who are present when constitutional torts are being committed have a duty to intervene and stop the unconstitutional conduct if they have a reasonable opportunity to do so." Bancroft v. City of Mount Vernon, 672 F. Supp. 2d 391, 406 (S.D.N.Y. 2009); accord Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994) ("It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence."). "An officer who fails to intercede is liable for the preventable harm caused by the actions of the other officers where that officer observes or has reason to know[] [] that excessive force is being used, . . . or [] that any constitutional violation has been committed by a law enforcement official." Anderson, 17 F.3d at 557 (citing O'Neill v. Krzeminski, 839 F.2d 9, 11-12 (2d Cir. 1988)).

Liability attaches, however, only if "(1) the officer had a

realistic opportunity to intervene and prevent the harm; (2) a reasonable person in the officer's position would know that the victim's constitutional rights were being violated; and (3) the officer does not take reasonable steps to intervene." <u>Jean-Laurent v. Wilkinson</u>, 540 F. Supp. 2d 501, 512 (S.D.N.Y. 2008) (citing <u>O'Neill</u>, 839 F.2d at 11-12).

Mr. Toliver's claim against Officer Cabble fails because there is no evidence that she had "realistic opportunity to intervene and prevent the harm." <u>Id.</u> Mr. Toliver conceded in his deposition that he could not recall seeing Officer Cabble during the night of the incident. The plaintiff nevertheless argues that Officer Cabble is responsible because she opened the cell door for Captain Cavalli. However, no evidence shows that Officer Cabble had any reason to know that the plaintiff's constitutional rights were being violated when she allegedly opened the door. Accordingly, the defendants' summary judgment motion as to claims against Officer Cabble should be granted.

K.   <u>Motion to Add Nicholas Pantea As a Defendant</u>

In his opposition papers, Mr. Toliver -- for the first time -- makes "a [m]otion to [a]mend [his] [c]omplaint to include Physician's Assistant Nicholas Pantea for falsifying [m]edical documents [sic] lying -- to conspire with D.O.C. to cover up this crime [arising out of the May 20, 2010 incident.]" (Toliver Decl.

35

at 67).  Mr. Toliver alleges that Mr. Pantea acted in retaliation
for the plaintiff's circulating a petition against Mr. Pantea for
inadequate medical care of inmates.  (Toliver Decl. at 67-68).  Mr.
Toliver has provided no further factual support for this claim.

A motion to amend is generally governed by Rule 15(a) of the
Federal Rules of Civil Procedure, which states that "[t]he court
should freely give leave when justice so requires."  Fed. R. Civ.
P. 15(a)(2).  Notwithstanding the liberality of the general rule,
"it is within the sound discretion of the court whether to grant
leave to amend."  John Hancock Mutual Life Insurance Co. v.
Amerford International Corp., 22 F.3d 458, 462 (2d Cir. 1994);
accord Krumme v. WestPoint Stevens Inc., 143 F.3d 71, 88 (2d Cir.
1998).  Regarding the use of this discretion, the Supreme Court has
stated:

> In the absence of any apparent or declared reason -- such
> as undue delay, bad faith or dilatory motive on the part
> of the movant, repeated failure to cure deficiencies by
> amendments previously allowed, undue prejudice to the
> opposing party by virtue of allowance of the amendment,
> futility of amendment, etc. -- the leave should . . . be
> freely given.

Foman v. Davis, 371 U.S. 178, 182 (1962) (internal quotation marks
omitted).

Where a proposed amendment adds new parties, the propriety of
amendment is governed by Rule 21 of the Federal Rules of Civil
Procedure.  Momentum Luggage & Leisure Bags v. Jansport, Inc., No.

00 Civ. 7909, 2001 WL 58000, at *1 (S.D.N.Y. Jan. 23, 2001). Under Rule 21, a party may be added to an action "at any time, on just terms." Fed. R. Civ. P. 21. In deciding whether to permit joinder, courts apply "'the same standard of liberality afforded to motions to amend pleadings under Rule 15.'" Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980) (footnote omitted) (quoting Fair Housing Development Fund Corp. v. Burke, 55 F.R.D. 414, 419 (E.D.N.Y. 1972)); accord Smith v. P.O. Canine Dog Chas, No. 02 Civ. 6240, 2004 WL 2202564, at *12 n.11 (S.D.N.Y. Sept. 28, 2004). Thus, joinder will be permitted absent undue delay, bad faith, prejudice, or futility. Foman, 371 U.S. at 182.

When a motion to amend is made in response to a motion to dismiss, the amendment will be deemed futile if it would be subject to dismissal for failure to state a claim. Smith, 2004 WL 2202564, at *12 (collecting cases). Where, however, a summary judgment motion has been made, the court must "determine whether the amendment would be futile under the summary judgment standard." Id.

To the extent that Mr. Toliver is alleging a retaliation claim, the proposed amendment would not withstand a motion for summary judgment. The plaintiff has adduced no evidence concerning allegations against Mr. Pantea other than his conclusory statements. That is not sufficient at this late stage, with

discovery closed and a motion for summary judgment pending.  See, e.g., Halebaian v. Berv, 869 F. Supp. 2d 420, 437 (S.D.N.Y. 2012) (denying plaintiff's motion to amend complaint while motion for summary judgment is pending where amendment would be futile); Azurite Corp. v. Amster & Co., 844 F. Supp. 929, 939 (S.D.N.Y. 1994) (denying plaintiff's motion to amend where proposed amendment "would be futile because the factual foundations of [its] new allegations are insufficient, as a matter of law, to withstand defendants' motion for summary judgment").

Even if the proposed amendment were not futile, I would recommend denying the plaintiff leave to amend on the grounds of undue delay and prejudice. See Foman, 371 U.S. at 182. Throughout discovery, the plaintiff never indicated that Mr. Pantea was a participant in the incidents at issue in this matter or provided any details about the claims against Mr. Pantea apart from his conclusory statements.  Now, the defendants would face significant difficulty in investigating and finding any information about the claims against Mr. Pantea.  See Silkwood Associates, Ltd. v. Junior Gallery Group, Inc., No. 88 Civ. 7082, 1991 WL 51103, at *1 (S.D.N.Y. April 3, 1991) (denying motion to amend complaint to add defendants because "the prejudice to defendants in allowing the

38

amendment is manifest, and the application comes in too late").[8]

    L.   <u>Failure to Effect Service</u>

    The defendants argue that the claims against Deputy Warden Donovan, Officer Bond, and Mr. Phillips should be dismissed under Rule 4(m) of the Federal Rules of Civil Procedure because they were not served and Mr. Toliver has not requested an extension of time to effectuate service or advanced good cause for his failure to effect timely service. (Def. Memo. at 40-41).

    Rule 4(m) requires dismissal without prejudice if service of the complaint and summons is not made within 120 days after those documents are filed; however, "if the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period." Fed. R. Civ. P. 4(m). A <u>pro se</u> prisoner, such as Mr. Toliver, is entitled to rely on service by the U.S. Marshals. <u>Romandette v. Weetabix Co.</u>, 807 F.2d 309, 311 (2d. Cir. 1986). Nevertheless, when it becomes apparent that the Marshals will not accomplish service by the Rule 4(m) or court-ordered deadline, a <u>pro se</u> prisoner "must advise the court [he] is relying on the Marshals to effect service and request a further extension

---

    [8] Because I recommend that the defendants' motion for summary judgment be granted as to claims against the Commissioner, Chief Davis, Warden Mulvey, Warden Duffy, Captain Gates, Officer Cherry, Officer Roman, Officer Cabble, and Mr. Phillips, I need not address the defendants' argument regarding qualified immunity as to these individual defendants.

of time for them to do so." <u>Meilleur v. Strong</u>, 682 F.3d 56, 62 (2d Cir. 2012) (affirming dismissal of <u>pro se</u> litigant's suit for failure to effect timely service); <u>see Redd v. Phillips</u>, 348 F. App'x 606, 607 (2d Cir. 2009) (affirming dismissal of complaint for failing to effectuate service because <u>pro se</u> plaintiff failed to provide requisite information for Marshal to locate defendant and offered only one letter demonstrating his attempt to locate defendant).

Moreover, a "plaintiff's <u>pro se</u> status alone does not justify an additional extension." <u>Rosano v. Adelphi University</u>, No. 11 CV 148, 2011 WL 8320457, at *2 (E.D.N.Y. Dec. 6, 2011) (citing <u>Jonas v. Citibank, N.A.</u>, 414 F. Supp. 2d 411, 417 (S.D.N.Y. 2006)). When a <u>pro se</u> plaintiff is on notice that the failure to effectuate service would result in a dismissal and is given time to effect service but fails to do so, dismissal of the complaint is appropriate. <u>See</u> <u>McDay v. Travis</u>, No. 05-4269, 2007 WL 4102718, at *2 (2d Cir. 2007) (affirming dismissal of complaint because <u>pro se</u> plaintiff failed to effect service despite reminders that defendants had not been properly served and given 18 months to effect service); <u>Rosano</u>, 2011 WL 8320457, at *2 (dismissing complaint when <u>pro se</u> plaintiff failed to effect service despite multiple warnings and given over 10 months to effect service); <u>Jonas</u>, 414 F. Supp. 2d at 416-17 (dismissing complaint when <u>pro se</u>

plaintiff was on notice for 32 months that he had not properly
served defendant); see also Sanders v. Moore, No. 08 Civ. 11081,
2011 WL 2207551, at *2 (S.D.N.Y. May 6, 2011) (dismissing pro
se complaint for failure to effectuate timely service and
collecting cases).

Here. Mr. Toliver was on notice that failure to serve Deputy
Warden Donovan, Officer Bond, or Mr. Phillips would result in a
dismissal.  See Toliver v. N.Y.C. Department of Corrections, 10
Civ. 5804, 2012 WL 5426658, at *8 (S.D.N.Y. Oct. 10, 2012).  To
date, however, Mr. Toliver has failed to serve these defendants.
He simply argues now that he has "tried" to serve these individuals
but has failed to do so.  (Toliver Decl. at 92-93).  I have already
noted that "[a]lthough Mr. Toliver is proceeding pro se, having
filed numerous lawsuits in the United States District Court for the
Southern District of New York, he is well aware of the procedures
to effect proper service and the consequences of failing to do so."
Id. (footnote omitted) (citing Tracy v. Freshwater, 623 F.3d 90,
102 (2d Cir. 2010) ("[W]hen a particular pro se litigant is
familiar with the procedural setting as a result of prior
experience such that it is appropriate to charge [him] with
knowledge of . . . particular requirements, it falls well within a
district court's discretion to lessen the solicitude that would
normally be afforded.") (alterations in original) (internal

41

quotation marks omitted)).  Accordingly, it is not appropriate to grant him an extension to effectuate service.

Consequently, the complaint should be dismissed against Deputy Warden Donovan, Correction Officer Bond, and Mr. Phillips for failure to effect timely service.

M.  <u>John Doe Defendants</u>

The case caption currently includes "Correction John Does(s) #('3')," "Captain Jane Doe, Shield #545," "Captain John Doe, Shield #545," "Officer John Doe," and "Officer Jane Doe."  However, no such individuals have been identified or served.  Mr. Toliver, for the first time in this litigation, seeks to identify "the John/Jane Doe who faxed the materials to  . . .  Judge Bonnie Witnner [sic] . . . and who typed the letter lying to Judge Witnner [sic] stating that [the plaintiff] was responsible for [n]ot being produced." (Toliver Decl. at 93).  However, he had never requested any information related to this "John/Jane Doe" during discovery, nor is there any indication that this individual had any connection to the allegations made in the Complaint.

Mr. Toliver should therefore be precluded from proffering any evidence regarding these unnamed defendants, as he "cannot predicate claims against named defendants based on the acts of unnamed defendants since there is no basis for vicarious or shared liability between them."  <u>Rasmussen v. City of New York</u>, 766 F.

Supp. 2d 399, 412 (E.D.N.Y. 2011).  Further, he cannot recover from

the unnamed defendants as he is seeking monetary damages from them

in their personal capacity.  See Peterson v. Tomaselli, 469, F.

Supp. 2d 146, 170 (S.D.N.Y. 2007).

In addition, as discussed, Mr. Toliver had 120 days after the

filing of the complaint to serve each defendant.  Because he has

failed to serve or identify any John or Jane Doe defendants, the

claims against any such defendants should be dismissed.  Fed. R.

Civ. P. 4(m).

N.   State Law Claims

The Complaint does not specifically allege any pendant state

law claims.  However, to the extent that it can be read liberally

to allege state law claims, those claims should be dismissed

because Mr. Toliver failed to comply with New York statutory

requirements.

New York Law requires that, in order for an action to be

brought against the City of New York or its employees, a notice of

claim must be served on the municipality within 90 days after the

claim arose.  N.Y. Gen. Mun. L. §§ 50-e(1)(a), 50-k(6).  "Federal

courts do not have jurisdiction to hear state law claims brought by

plaintiffs who have failed to comply with the notice of claim

requirement, nor can a federal court grant a plaintiff permission

to file a late notice of claim."  Dingle v. City of New York, 728

43

F. Supp. 2d 332, 348-49 (S.D.N.Y. 2010).  "The burden is on the plaintiff to demonstrate compliance with the Notice of Claim requirement."  <u>Horvath v. Daniel</u>, 423 F. Supp. 2d 421, 423 (S.D.N.Y. 2006).  Mr. Toliver has not met this burden.

     1.  <u>December 11, 2009 Incident</u>

Mr. Toliver has not filed a timely notice with respect to pendent state law claims arising out of the December 11, 2009 incident.  He does not contest this.  Therefore, any state law claims related to the December 11, 2009 incident should be dismissed for failure to serve a timely notice of claim.

     2.  <u>May 20, 2010 Incident</u>

While a notice of claim was filed for the May 20, 2010 incident (Notice of Claim related to the May 20, 2010 incident received July 29, 2010 ("Notice of Claim"), attached as Exh. Q to Marutollo and Silverberg Decl.), Mr. Toliver has failed to file the notice thirty days prior to the commencement of the action as required by New York law.

New York law requires that

a plaintiff asserting state tort law claims against a
municipal entity or its employees must plead in the
complaint that: (1) the Notice of Claim was timely served
within ninety days after such claim arose; (2) at least
thirty days have elapsed since the Notice of Claim was
filed and before the complaint was filed; and (3) the
defendant failed to satisfy the claim in that time.

<u>Matthews v. City of New York</u>, __ F. Supp. 2d __, __, 2012 WL

3839505, at *24 (E.D.N.Y. 2012). Here, Mr. Toliver filed a notice
of claim regarding the May 20, 2010 incident on July 22, 2010
(Notice of Claim); however, his Complaint was filed on July 14,
2010. Thus, the Complaint fails to comply with New York law, and
therefore, all state law claims arising out of the May 20, 2010
incident should be dismissed. See, e.g., Faruki v. City of New
York, NO. 10 Civ. 9614, 2012 WL 1085533, at *9-10 (S.D.N.Y. March
30, 2012) (dismissing state law claims with prejudice in response
to motion for summary judgment for failure to comply with N.Y. Gen.
Mun. L. § 50(i)(1)(b)).

Conclusion

For the reasons stated above, I recommend that the defendants'
motion for partial summary judgment (Docket no. 128) be granted
except with respect to plaintiff's Section 1983 claims of
unreasonable force against Captain Cavalli arising out of the
December 11, 2009 incident and against Officer Stultz, Officer
Smith, and Captain Merced arising out of the May 20, 2010 incident.
In addition, I recommend that the plaintiff's motion to amend to
add Nicholas Pantea as a defendant be denied. Pursuant to 28
U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal
Rules of Civil Procedure, the parties shall have fourteen (14) days
from this date to file written objections to this Report and
Recommendation. Such objections shall be filed with the Clerk of

the Court, with extra copies delivered to the chambers of the Honorable Richard J. Sullivan, Room 640, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully Submitted,

JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE.

Dated: New York, New York
January 25, 2013

Copies mailed this date:

Michel Toliver
10-A-4565
Upstate Correctional Facility
P.O. Box 2001
Malone, New York  12953

Joseph A. Marutollo, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York  10007

Steven M. Silverberg, Esq.
Assistant Corporation Counsel
100 Church Street
New York, New York  10007