UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────────┐
│  MICHEL TOLIVER,                          │
│                             Plaintiff,    │
│                                           │
│         -v-                               │                    No. 10-cv-822 (RJS)
│                                           │
│  NEW YORK CITY DEPARTMENT OF              │
│  CORRECTIONS, et al.,                     │
│                             Defendants.   │
├─────────────────────────────────────────┤
│  MICHEL TOLIVER,                          │
│                             Plaintiff,    │                    No. 10-cv-5355 (RJS)
│                                           │
│         -v-                               │                    OPINION & ORDER
│                                           │
│  P.H.S. CORP., et al.,                    │
│                             Defendants.   │
└─────────────────────────────────────────┘
```

RICHARD J. SULLIVAN, District Judge:

On February 3, 2010, Plaintiff Michel Toliver commenced the first of these consolidated actions, in which he alleges excessive force in violation of the Due Process Clause while he was detained at Riker's Island.  (Doc. No. 1.)  On November 14, 2014, a jury returned a unanimous verdict in favor of Defendants on all claims, except that it found Defendant Noel Merced liable for excessive force, for which it awarded Plaintiff $1.00 in nominal damages and no punitive damages.  Now before the Court are:  (1) Defendants' motion pursuant to Federal Rule of Civil Procedure 50(b) for entry of judgment as a matter of law ("JMOL") in Merced's favor; (2) Plaintiff's motion pursuant to Federal Rule of Civil Procedure 59 to alter or amend the judgment or for a new jury trial; and (3) Defendants' motion for costs.  For the reasons set forth below,

Defendants' Rule 50(b) and Plaintiff's Rule 59 motions are denied.  Furthermore, the Court denies Defendants' motion for costs without prejudice to renewal.

## I. BACKGROUND[1]

The Court presumes the parties' familiarity with the underlying facts and procedural history of this case and offers only a short summary of each for purposes of this motion.  On November 10, 2014, trial commenced on Plaintiff's consolidated claims brought pursuant to 42 U.S.C. § 1983 alleging that, while Plaintiff was a pretrial detainee on Riker's Island, Correction Captain Frank Cavalli used excessive force against him on December 11, 2009 and that Defendants Correction Captain Noel Merced and Correction Officers Selvin Stultz and Frank Smith used excessive force against him on May 20, 2010 (the "May 20 Incident").  With respect to the May 20 Incident, Plaintiff testified at trial that Stultz and Smith were involved in an altercation with Plaintiff while escorting him back to his housing unit.  (Tr. 139:16–153:3.) Plaintiff testified that, even though he was "handcuffed and shackled" and was restrained by Stultz and Smith, Merced then pepper-sprayed Plaintiff's eyes, nose, mouth, face, ears, neck, and chest, which caused Plaintiff "excruciating" pain.  (Tr. 150:10–23, 154:23–24, 155:5–6, 155:12–14, 155:20.)  Plaintiff also testified that after Merced pepper-sprayed him, Merced, Stultz, and Smith moved Plaintiff into the "decontamination room," where they placed Plaintiff's head under ice-cold water and banged his head against the floor.  (*Id.* at 162:7–167:12, 167:17–168:9, 168:18–169:6.)   Plaintiff testified that, immediately thereafter, Merced forced Plaintiff to perform oral sex on him.  (*Id.* at 169:11–170:14, 170:25–171:3, 171:11–14.)

---

[1] In deciding Defendants' Rule 50(b) motion, the Court has considered Defendants' Memorandum of Law in Support of Their Motion (Doc. No. 265 ("Mem.")), Plaintiff's Memorandum of Law in Opposition (Doc. No. 275 ("Opp'n")), Defendants' Reply Memorandum of Law ((Doc. No. 276 ("Reply")), Plaintiff's Supplemental Opposition Briefs (Doc. Nos. 288, 295), and Defendants' sur-reply (Doc. No. 299 ("Sur-reply")), and the exhibits attached thereto.  In deciding Plaintiff's Rule 59 Motion, the Court has considered Plaintiff's brief (Doc. No. 286) and Defendants' opposition (Doc. No. 294).  The Court has also considered the trial transcript (Doc Nos. 257, 259, 260, 262 ("Tr.")) and trial exhibits introduced in this action.  Unless otherwise indicated, citations to docketed items refer to those materials that appear in *Toliver v. N.Y.C. Dep't of Corrs.*, No. 10-cv-822 (RJS) (S.D.N.Y.).

On November 14, 2014, the jury found for Defendants on all claims, except that it found Merced liable for excessive force.  The jury awarded Plaintiff nominal damages of one dollar but denied punitive damages.  On December 5, 2014, Defendants moved the Court to direct entry of judgment as a matter of law in favor of Merced and to set aside the award of one dollar in nominal damages.  (Doc. No. 264.)  Plaintiff thereafter filed an opposition brief on January 6, 2015 (Doc. No. 275), to which Defendants filed a reply on January 13, 2015 (Doc. No. 276).

In a letter dated January 1, 2015, Plaintiff requested that his attorneys be removed from the case and that he be granted leave to proceed *pro se*.  (Doc. No. 277 at 4–5.)  The Court granted Plaintiff's request on March 2, 2015.  (*Id.* at 7.)  On April 8, 2015, Plaintiff, now proceeding *pro se*, filed a motion for post-trial relief pursuant to Rule 59.  (Doc. No. 286.) Although the Court offered to disregard Plaintiff's former counsel's brief filed in opposition to Defendants' Rule 50(b) motion (Doc. No. 277 at 8), Plaintiff instead filed his own *pro se* "supplemental" opposition letters to Defendants' Rule 50(b) motion and asked that the Court continue to consider his former counsel's submission (Doc. Nos. 288, 295).  Defendants thereafter filed a memorandum in opposition to Plaintiff's Rule 59 motion on April 29, 2015 (Doc. No. 294), and a sur-reply in support of their Rule 50(b) motion on May 11, 2015 (Doc. No. 299).  Plaintiff has already filed a notice of appeal of the Court's judgment (Doc. No. 284), which the Second Circuit has stayed during the pendency of the instant motions (Doc. No. 293).

## II. MERCED'S MOTION FOR JUDGMENT AS A MATTER OF LAW

### A. Legal Standard

"The standard governing motions for judgment as a matter of law ('JMOL') pursuant to Rule 50 . . . is well established."  *Galdieri-Ambrosini v. Nat'l Realty & Dev. Corp.*, 136 F.3d 276, 289 (2d Cir. 1998) (internal citation omitted).  "A defendant is entitled to judgment as a matter of law if, after a party has been fully heard on an issue during trial, the Court finds that 'a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that

issue . . . .'" *In re Vivendi Universal, S.A. Sec. Litig.*, 765 F. Supp. 2d 512, 535 (S.D.N.Y. 2011) (quoting Fed. R. Civ. P. 50(a)).  In determining whether there was a legally sufficient evidentiary basis for the jury's conclusion, the Court must "defer[] to the jury's assessment of the evidence and all reasonable inferences the jurors could draw from that evidence," and "may not itself weigh the credibility of witnesses or consider the weight of the evidence." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 145 (2d Cir. 2001) (internal citation and quotation marks omitted).  "A movant's burden in securing Rule 50 relief is particularly heavy after the jury has deliberated in the case and actually returned its verdict." *Cross v. N.Y. City Transit Auth.*, 417 F.3d 241, 248 (2d Cir. 2005).

> Under such circumstances, the district court may set aside the verdict only where there is such a complete absence of evidence supporting the verdict that the jury's findings could only have been the result of sheer surmise and conjecture, or there is such an overwhelming amount of evidence in favor of the movant that reasonable and fair minded [jurors] could not arrive at a verdict against him.

*Id.* (alterations and internal quotation marks omitted).

## B.  Sufficiency of the Evidence

To prevail on a claim brought under Section 1983, a plaintiff must prove, by preponderance of the evidence, "(1) the violation of a right secured by the Constitution and laws of the United States, and (2) the alleged deprivation was committed by a person acting under color of state law." *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 87–88 (2d Cir. 2015) (internal quotation marks omitted).  Although Defendants concede that Merced acted "under color of state law" during the May 20 Incident, they argue that no reasonable juror could have found that Merced used excessive force against Plaintiff in violation of the Constitution. (Mem. 3–14.)

To establish a violation of the "right of pretrial detainees to be free from excessive force amounting to punishment" under the Due Process Clause of the Fourteenth Amendment of the Constitution, Plaintiff must prove both (1) a subjective element, which "focus[es] on the

4

defendant's motive for his conduct," and (2) an objective element, which "focus[es] on the conduct's effect." *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir. 2000).[2]  "The subjective component of the claim requires a showing that the defendant 'had the necessary level of culpability, shown by actions characterized by wantonness' in light of the particular circumstances surrounding the challenged conduct." *Id.* at 21 (quoting *Blyden v. Mancusi,* 186 F.3d 252, 262 (2d Cir. 1999)). In assessing whether a defendant acted "maliciously or wantonly," a court considers factors including "the extent of the injury and the mental state of the defendant, as well as 'the need for the application of force; the correlation between that need and the amount of force used; the threat reasonably perceived by the defendants; and any efforts made by the defendants to temper the severity of a forceful response.'"  *Scott v. Coughlin*, 344 F.3d 282, 291 (2d Cir. 2003) (quoting *Romano v. Howarth,* 998 F.2d 101, 105 (2d Cir. 1993)).

With respect to the objective element, the violation must be "sufficiently serious by objective standards." *Griffin v. Crippen*, 193 F.3d 89, 91 (2d Cir. 1999) (internal quotation marks omitted).  This inquiry is "context specific, turning upon contemporary standards of decency." *Blyden,* 186 F.3d at 263 (internal quotation marks omitted).  Although "[n]ot every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights," *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997), "a showing of extreme injury is not required to bring an excessive force claim if the alleged conduct involved 'unnecessary and wanton infliction of pain,'" *Jeanty v. County of Orange*, 379 F. Supp. 2d 533, 540 (S.D.N.Y. 2005) (quoting *Sims,* 230 F.3d at 21–22).

Here, Plaintiff testified that, notwithstanding the fact that Plaintiff was "handcuffed and shackled" and was restrained by Smith and Stultz, Merced pepper-sprayed Plaintiff all over his

---

[2] Although the Due Process Clause of the Fourteenth Amendment establishes the "right of pretrial detainees to be free from excessive force amounting to punishment," *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999), "the Second Circuit applies the same standard to all excessive force claims, whether raised by a prisoner under the Eighth Amendment, or by a pre-trial detainee under the Fourteenth Amendment," *Santiago v. C.O. Campisi Shield No. 4592*, 91 F. Supp. 2d 665, 672 (S.D.N.Y. 2000) (citing *Walsh*, 194 F.3d at 48).  Thus, the Court relies on cases addressing excessive force claims under both the Eighth Amendment and the Fourteenth Amendment.

body, including his eyes, nose, mouth, face, ears, neck, and chest, thus causing him "excruciating" pain within seconds. (Tr. at 150:10–23, 154:23–24, 155:5–6, 155:12–14, 155:20.) For whatever reason, Merced decided to offer no direct testimony to rebut Plaintiff's account of Merced's use of pepper spray. (*See id.* at 534:16–535:3.) Furthermore, although Smith and Stultz contradicted many of the details alleged by Plaintiff, they nevertheless acknowledged that Merced pepper-sprayed Plaintiff in Plaintiff's "upper torso/facial area" for at least two seconds. (*Id.* at 469:16–20, 507:3–508:5, 570:17–19.) The officers also acknowledged that at the time of the May 20 Incident, Plaintiff was handcuffed and restrained by them and that Officer Stultz weighed approximately 350 pounds, whereas Plaintiff weighed approximately 150 to 170 pounds. (*Id.* at 459:12–19, 502:20–21, 505:17–21.)

As the Second Circuit has recognized, "infliction of pepper spray" may have "a variety of incapacitating and painful effects, and as such, its use constitutes a significant degree of force" that "should not be used lightly or gratuitously" against those who are "complying with police commands or otherwise pose[] no immediate threat . . . ." *Tracy v. Freshwater*, 623 F.3d 90, 98–99 (2d Cir. 2010) (internal citation omitted). Accordingly, the jury reasonably could have concluded that Merced's use of pepper spray against Plaintiff, who was already handcuffed and restrained by two other officers who were far larger, was an "unnecessary and wanton infliction of pain." *See Alston v. Daniels*, No. 15-cv-669 (CSH), 2015 WL 7257896, at *4 (D. Conn. Nov. 17, 2015) ("In the Second Circuit, a prison guard's use of a chemical agent . . . on an inmate may, under certain circumstances, constitute unnecessary and wanton infliction of pain in violation of the Eighth Amendment."). Furthermore, the jury could reasonably have concluded that Merced's use of pepper spray was sufficiently serious by objective standards. *See Lewis v. Clarkstown Police Dep't*, No. 11-cv-2487 (ER), 2014 WL 1364934, at *6 (S.D.N.Y. Mar. 31, 2014) (recognizing that use of pepper spray, even if the harm inflicted is of "limited duration," may be "sufficiently repugnant" to satisfy objective test), *reconsideration denied*, No. 11-cv-

2487 (ER), 2014 WL 6883468 (S.D.N.Y. Dec. 8, 2014); *see also Adilovic v. County. of Westchester*, No. 08-cv-10971 (PGG), 2011 WL 2893101, at *6 n.12 (S.D.N.Y. July 14, 2011) (noting that "[t]he use of pepper spray . . . can amount to an excessive use of force" (internal citation omitted)).

Defendants nonetheless urge the Court to discredit Plaintiff's testimony as self-serving and inconsistent. (Mem. 6.) To be sure, the jury's verdict in favor of Cavalli, Smith, and Stultz, and its award of only $1 in nominal damages for Plaintiff's claim against Merced, reflect that the jury rejected virtually all of Plaintiff's histrionic testimony, including Plaintiff's sensational allegations of sexual assault. Indeed, it was obvious to the Court that Plaintiff's testimony at times veered between utter delusion and rank perjury. However, it was "fully within the jury's fact-finding discretion to credit portions" of Plaintiff's testimony, particularly those portions regarding the use of pepper spray that were corroborated by Stultz and Smith. *Hoyte v. Nat'l R.R. Passenger Corp.*, No. 04-cv-5297 (GEL), 2006 WL 2053383, at *3 n.2 (S.D.N.Y. July 24, 2006); *see also Haywood v. Koehler*, 78 F.3d 101, 105 (2d Cir. 1996) ("[I]n most trials . . . the jurors [a]re not required to accept the entirety of either side's account, but [a]re free to accept bits of testimony from several witnesses and to make reasonable inferences from whatever testimony they credit[ ]."); *Piesco v. Koch*, 12 F.3d 332, 343 (2d Cir. 1993) ("It was the responsibility of the jury, not the court, to determine whether her trial testimony should be believed."). Here, the jury could reasonably have rejected most of Plaintiff's testimony and yet still credited Plaintiff's corroborated testimony that Merced used pepper spray against him and concluded that Merced's use of pepper spray amounted to excessive force.

Furthermore, the jury's finding of liability with respect to Merced was not irreconcilable with the award of nominal damages. As the Second Circuit has recognized, "a jury could reasonably determine that compensatory damages are inappropriate even where excessive force was used," and therefore, a jury may "reasonably award" only "nominal damages" when the

"victim's claims of injury lack credibility, or where the injuries lack monetary value." *Amato v. City of Saratoga Springs, N.Y.*, 170 F.3d 311, 314 (2d Cir. 1999).   On this motion, where, as Defendants acknowledge, the Court must draw all inferences against the moving party (Mem. at 3 (citing *Piesco*, 12 F.3d at 343)), the Court finds that the jury could reasonably have credited Plaintiff's testimony regarding Merced's use of pepper spray and found that Merced employed excessive force, but also have found that Plaintiff had not suffered a compensable injury that would entitle him to damages.   Furthermore, it was "fully within the jury's fact-finding discretion" to conclude that Smith's and Stultz's acts taken to restrain Plaintiff were *not* unlawful, but that once Merced arrived, Merced maliciously and wantonly overreacted by exerting such a significant degree of force upon a detainee who no longer posed a threat.  *See Hoyte*, 2006 WL 2053383, at *3 n.2.

Accordingly, viewing the evidence in the light most favorable to Plaintiff, as the Court must, *see Tolbert v. Queens College*, 242 F.3d 58, 70 (2d Cir. 2001), the Court denies Defendants' motion for judgment as a matter of law on Plaintiff's excessive force claim against Merced.

## C.  Qualified Immunity

Defendants also argue that Merced is entitled to judgment as a matter of law based on qualified immunity.  (Mem. 14–18.)  As an initial matter, the Court finds that Defendants have waived this argument.  As the Second Circuit has instructed, "[t]he qualified immunity defense can be waived, either by failure to raise it in a timely fashion, or by failure to raise it with sufficient particularity." *McCardle v. Haddad*, 131 F.3d 43, 51 (2d Cir. 1997) (internal citation omitted).  Accordingly, a party may only move for judgment as a matter of law following a trial "if it sought such relief before the jury retired to deliberate" and the post-trial motion is based on "those grounds 'specifically raised in the prior motion for [judgment as a matter of law].'" *Provost v. City of Newburgh*, 262 F.3d 146, 161 (2d Cir. 2001) (quoting *Samuels v. Air Transp.*

*Local 504*, 992 F.2d 12, 14 (2d Cir. 1993)); *see also McCardle*, 131 F.3d at 51 ("[A] posttrial

motion for JMOL can properly be made only if, and to the extent that, such a motion specifying

the same grounds was made prior to the submission of the case to the jury.").  When Defendants

in this case moved for judgment as a matter of law pursuant to Rule 50(a) at the close of

Plaintiff's case (Tr. 331:10–11) and at the close of Defendants' case (*id.* at 647:6–17),

Defendants failed to specify that they were seeking dismissal based on qualified immunity.

Accordingly, the Court concludes that because Defendants "did not specifically include a

qualified immunity argument in [their] pre-verdict request for judgment as a matter of law," they

are precluded from "includ[ing] such an argument in [their] post-verdict motion."  *Provost*, 262

F.3d at 161.

Defendants note, correctly, that some courts excuse such failure when the parties and the

Court agree to present special interrogatories on issues relevant to qualified immunity to the jury.

(Reply 5 (citing *Harewood v. Braithwaite*, 64 F. Supp. 3d 384, 395 n.11 (E.D.N.Y. 2014)).)  In

this case, Defendants made a boilerplate reservation of "the opportunity to submit proposed

[s]pecial [i]nterrogatories for the jury" in the proposed jury instructions, submitted nearly seven

weeks before trial.  (Doc. No. 210 at 1 n.1.)  However, Defendants failed to submit proposed

special interrogatories on the issue of qualified immunity for the Court's review, even after

having been prompted to do so by the Court at a conference held on the last day of trial before

Defendants rested their case and made their second Rule 50(a) motion.  (Tr. 612:7–16, 613:5–

13); *see also Lee v. McCue*, No. 04-cv-6077 (CM), 2007 WL 2230100, at *3 (S.D.N.Y. July 25,

2007) ("It is . . . undoubtedly the defendant's burden to request special interrogatories that would

elicit the necessary factual findings from the jury."); *Matthews v. City of New York*, No. 02-cv-

715 (CPS), 2006 WL 842392, at *8 n.3 (E.D.N.Y. Mar. 27, 2006) (finding defendant who

"clearly failed to request special interrogatories even after he had been invited to do so" by the

Court waived qualified immunity defense).  Instead, Defendants equivocated and indicated that if

the jury returned a verdict in Plaintiff's favor, they would like time to "explore" whether special interrogatories on the qualified immunity issue would be "appropriate." (Tr. 612:21-25.)  Thus, Defendants' failure to move under Rule 50(a) for judgment as a matter of law on the issue of qualified immunity at the close of Defendants' case, which took place later that day, is not excused.

The Court also finds that, even assuming Defendants did not waive the qualified immunity defense, their arguments would also fail on the merits.  It is true that "qualified immunity protects state officials from civil liability for actions performed in the course of their duties if their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Luna v. Pico*, 356 F.3d 481, 490 (2d Cir. 2004) (internal quotation marks omitted).  "Once the jury has resolved any disputed facts that are material to the qualified immunity issue, the ultimate determination of whether the officer's conduct was objectively reasonable is to be made by the court." *Zellner v. Summerlin*, 494 F.3d 344, 368 (2d Cir. 2007); *see also Warren v. Dwyer*, 906 F.2d 70, 76 (2d Cir. 1990) ("The ultimate legal determination whether, on the facts found, a reasonable police officer should have known he acted unlawfully is a question of law better left for the court to decide.").

Here, Defendants premise their arguments for qualified immunity on the proposition that Plaintiff failed to offer sufficient evidence of a constitutional violation upon which a reasonable juror could find in his favor.  (Mem. 15.)  However, as already discussed above, the Court has determined that Defendants failed to meet their "particularly heavy" burden of demonstrating that the jury lacked a legally sufficient basis for finding that Merced used excessive force in violation of the Due Process Clause.  *See Cross*, 417 F.3d at 248.  Furthermore, the Court concludes that the right to be free of excessive force while in pretrial detention was "well established" at the time of the May 20 Incident.  *See, e.g.*, *Lewis*, 2014 WL 1364934, at *10.

Defendants fare no better with their argument that, even if Merced used excessive force with Plaintiff, "reasonable officials could still disagree" regarding whether he had violated Plaintiff's constitutional rights. (Mem. 16.) Construing the evidence in the light most favorable to Plaintiff, *see Kerman v. City of New York*, 374 F.3d 93, 114 (2d Cir. 2004), the Court is not prepared to find that Merced's decision to pepper-spray Plaintiff while he was restrained was objectively reasonable, as it must for Defendant to prevail on his qualified immunity argument. *See Tracy*, 623 F.3d at 99 n.5 ("[I]t was well established . . . that the use of entirely gratuitous force is unreasonable and therefore excessive, and in light of this precedent, we presume that no reasonable officer could have believed that he was entitled to use pepper spray gratuitously against a restrained and unresisting arrestee." (internal citation omitted)). Accordingly, the Court rejects Defendants' argument for judgment as a matter of law in Merced's favor on his affirmative defense of qualified immunity.

### D. Plaintiff's Additional Arguments Against Defendants' Rule 50(b) Motion

In his second supplemental brief, Plaintiff, proceeding *pro se*, makes three additional arguments against Defendants' Rule 50(b) motion. (Doc. No. 295.) Although the Court finds these arguments to be totally irrelevant to the instant motion, the Court addresses each argument for the purpose of clarifying the record.

First, Plaintiff claims that he was not made aware of the fact that Defendants' counsel, Joseph A. Marutollo, interned for the Court when he was a law student during the spring semester of 2009. (Doc. No. 295 at 3.) However, the Court *sua sponte* advised all parties of this fact at a pretrial conference, dated January 13, 2014, which Plaintiff attended telephonically. (Doc. No. 177 at 3:4–5.) To the extent Plaintiff's submission could be construed as a motion for the Court to recuse itself pursuant to 28 U.S.C. § 144, Plaintiff has failed to comply with the requirement that the moving party file an affidavit "at the earliest possible moment after obtaining knowledge of facts demonstrating the basis for such claim," since he waited over a

year after learning of Marutollo's employment history to raise the issue again with the Court. *Apple v. Jewish Hosp. & Med. Ctr.*, 829 F.2d 326, 333 (2d Cir. 1987).  And while the Court, pursuant to 28 U.S.C. § 455(a), must recuse itself *sua sponte* "in any proceeding in which [its] impartiality might reasonably be questioned," *id.*, this is not one of the "rare cases" in which that standard is met, *Ghee v. Artuz*, 285 F. Supp. 2d 328, 329 (E.D.N.Y. 2003) (quoting *Blue Cross & Blue Shield of N.J. v. Philip Morris, Inc.*, 53 F. Supp. 2d 338, 346 (E.D.N.Y. 1999)).[3]  Here, "an objective and disinterested observer, knowing and understanding all of the facts and circumstances," could not "reasonably question the [C]ourt's impartiality" based merely on Mr. Marutollo's short internship with the Court while he was a law student over *five years* before the trial.  *SEC v. Razmilovic*, 738 F.3d 14, 29 (2d Cir. 2013); *see also Ghee*, 285 F. Supp. 2d at 329–30 (denying motion to disqualify attorney premised on fact attorney clerked for judge over a year earlier); *cf. United States v. Ferguson*, 550 F. Supp. 1256, 1260 (S.D.N.Y. 1982) (Weinfeld, J.) (concluding that "mere fact of close relationship" between judge and former law clerk acting as prosecutor "did not require disqualification," but finding recusal warranted because former clerk's credibility in grand jury testimony would be at issue in trial).  Furthermore, as the Second Circuit has underscored, "where the standards governing disqualification have not been met, disqualification is not optional; rather, it is prohibited."  *In re Aguinda*, 241 F.3d 194, 201 (2d Cir. 2001).  Accordingly, the Court concludes that its recusal would be totally unwarranted.

Next, Plaintiff claims that his counsel improperly withdrew his letter motion, filed *pro se*, for reconsideration of the Court's grant of partial summary judgment.  (Doc. No. 295 at 3; *see also* Doc. No. 167.)   Again, Plaintiff mischaracterizes the record, since the Court actually considered, and rejected, that very motion for reconsideration.  (Doc. No. 175.)

And finally, Plaintiff argues that his counsel settled a related matter, *Toliver v. City of New York*, No. 10-cv-7798 (RJS) (JCF), without his consent.  (Doc. No. 295 at 5.)   This

---

[3] The Court also notes that none of the other bases for disqualification set forth in 28 U.S.C. § 455(b) apply.

argument, in addition to being completely unrelated to Defendants' Rule 50(b) motion, is also meritless. It is well established that while "the decision to settle is the client's to make, not the attorney's," *Fennell v. TLB Kent Co.*, 865 F.2d 498, 501–02 (2d Cir. 1989), courts nonetheless "presume that an attorney-of-record who enters into a settlement agreement, purportedly on behalf of a client, had authority to do so," and to rebut this presumption, a party must introduce "affirmative evidence that the attorney lacked authority," *In re Artha Mgmt., Inc.*, 91 F.3d 326, 329 (2d Cir. 1996). Here, Defendants represent, and Plaintiff does not dispute, that a settlement check was mailed to Plaintiff on May 15, 2014. (Doc. No. 299 at 3.) While Plaintiff claims that he was "on suicide watch . . . for months on medication" at the time the case was settled (Doc. No. 295 at 5), Plaintiff does not otherwise explain why he waited to raise his objections to the settlement agreement nearly a year later, notwithstanding his active engagement with his attorneys litigating his various Section 1983 cases on his behalf.

Based on the facts before the Court, Plaintiff has completely failed to meet his burden of showing that his counsel lacked authority to settle his related case. *Cf. Gomez v. City of New York*, 805 F.3d 419, 425 (2d Cir. 2015) (remanding for evidentiary hearing on issue of attorney's authority to enter settlement for client where "a party *promptly* raise[d] *a colorable argument* that his or her attorney lacked authority to settle or otherwise dismiss his or her claims" (emphasis added)). Accordingly, although the Court denies Defendants' Rule 50(b) motion, it also expressly rejects Plaintiff's completely baseless and irrelevant arguments.

### III. PLAINTIFF'S MOTION FOR A NEW TRIAL OR TO ALTER OR AMEND THE JUDGMENT

The Court next turns to Plaintiff's motion, brought *pro se*, for post-trial relief. (Doc. No. 286.) Though Plaintiff moves pursuant to Rule 59, he does not specify whether he seeks a new trial, pursuant to Rule 59(a), or an altered or amended judgment, pursuant to Rule 59(e). Because he proceeds *pro se*, the Court construes his submission liberally to raise both arguments. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (noting that

"submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they *suggest*" (citation and quotation marks omitted)).  Under either theory, Plaintiff's motion is baseless.

Pursuant to Federal Rule of Civil Procedure 59(a)(1)(A), "[t]he court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court."  Fed. R. Civ. P. 59(a)(1)(A).  "The legal test for granting a new trial is less stringent than for granting judgment as a matter of law."  *Luv n' Care, Ltd. v. Regent Baby Prods. Corp.*, 898 F. Supp. 2d 650, 654 (S.D.N.Y. 2012); *see also Caruolo v. John Crane, Inc.*, 226 F.3d 46, 54 (2d Cir. 2000) ("Unlike a motion for judgment as a matter of law, a motion for a new trial may be granted even if there is substantial evidence to support the jury's verdict." (internal quotation marks omitted)).  "Nevertheless, in practice courts do not grant new trials as freely as the language suggests," *Learning Annex Holdings, LLC v. Rich Glob., LLC*, 860 F. Supp. 2d 237, 241 (S.D.N.Y. 2012), and movants for a new trial are still held to "a heavy burden," *Spinelli v. City of New York*, No. 02-cv-8967 (RWS), 2011 WL 2802937, at *1 (S.D.N.Y. July 12, 2011) (internal quotation marks omitted).  The Second Circuit has instructed that "[a] motion for a new trial ordinarily should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice."  *Medforms, Inc. v. Healthcare Mgmt. Sols., Inc.*, 290 F.3d 98, 106 (2d Cir. 2002) (quoting *Hugo Boss Fashions, Inc. v. Fed. Ins. Co.*, 252 F.3d 608, 623–24 (2d Cir. 2001)).

Similarly, while a party may move to alter or amend a judgment pursuant to Rule 59(e), the movant must "satisf[y] the heavy burden of demonstrating 'an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice.'"  *Hollander v. Members of Bd. of Regents of Univ. of N.Y.*, 524 F. App'x

14

727, 729 (2d Cir. 2013) (quoting *Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992)).

Plaintiff first argues that the jury's award of only nominal damages "shocks the conscience and clearly does not compensate Plaintiff" for his "pain and suffering and physical abuse."  (Doc. No. 286 at 2; *see also* Doc. No. 288 at 9.)  But as the Court has already held, the jury reasonably could have found Merced liable for excessive force but have also found that Plaintiff did not suffer any compensable injuries.  In fact, Plaintiff himself acknowledges that an award of only nominal damages is "not inconsistent with liability" in an excessive force claim. (Doc. No. 286 at 4 (citing *James v. Tilgham*, 194 F.R.D. 408 (D. Conn. 1999)).)  Put simply, the jury could have found Plaintiff's testimony regarding his injuries to be wildly exaggerated and unworthy of belief, much like his claims of sexual assault and his assertions that he survived an airline crash in Spain (*see* Tr. 192:19–194:9), and yet still have found that Merced's use of pepper spray was unjustified and malicious.  Accordingly, the Court concludes that Plaintiff provides no basis to upset the jury's award of only nominal damages.

Plaintiff next offers a litany of complaints regarding his former counsel's performance during trial.  (Doc. No. 286 at 2; *see also* Doc. No. 288 at 9.)  Among other things, Plaintiff avers that he was "severely prejudiced" by his counsel's "withdrawal" of certain documentary evidence and their decision not to call certain witnesses to testify.  (Doc. No. 286 at 3, 8.)  He claims that had this evidence been introduced it "would have led to both a guilty verdict of all defendants and a larger award verdict."  (*Id.*)

The Court first notes that Plaintiff's grievances are belied by what the Court observed to be his lawyers' highly capable and professional representation throughout the trial.  Indeed, at a conference with the parties' attorneys while the jury was deliberating, the Court expressed its appreciation to Plaintiff's attorneys, who worked *pro bono*, for their "very impressive" advocacy.  (Tr. 722:16–723:4.)  Furthermore, "[w]ith respect to strategic and tactical decisions

15

concerning the conduct of trials," including decisions regarding which evidence to introduce, parties "are deemed to repose decision-making authority in their lawyers." *Calvo v. Donelli*, No. 06-cv-1794 (JFB), 2007 WL 1288098, at *11 (E.D.N.Y. Apr. 30, 2007). Even assuming, *arguendo*, that Plaintiff's lawyers "did not, for whatever reason, carry out [P]laintiff's wishes," none of the errors alleged by Plaintiff "remotely threatened a miscarriage of justice or a seriously erroneous outcome, the usual bases for a new trial." *Adams v. Rivera*, No. 94-cv-65 (JSR), 1997 WL 742537, at *1 (S.D.N.Y. Dec. 2, 1997). The Court concludes that "[w]hatever complaints [Plaintiff] might have regarding [his] counsel's performance," neither a new trial nor alteration of the judgment is an "appropriate remedy for those complaints." *DeHoust v. Baxter Healthcare Corp.*, No. 93-cv-0774 (HB), 1999 WL 280423, at *3 (S.D.N.Y. May 4, 1999) (quoting *Williams v. City of Newburgh*, 830 F. Supp. 770, 774 (S.D.N.Y. 1993)); *accord*, *Adams*, 1997 WL 742537, at *1. Accordingly, the Court denies Plaintiff's motion pursuant to Rule 59.

## IV. TAXATION OF COSTS

In light of Plaintiff's decision to decline Defendants' pre-trial offer of judgment in the amount of $10,001, plus reasonable attorneys' fees, expenses, and costs (Doc. No. 283-2), Defendants also move for taxation of costs in the amount of $5,101.82 pursuant to Rules 54 and 68 of the Federal Rules of Civil Procedure, Local Civil Rule 54.1, and 28 U.S.C. §§ 1920, 1923. (Doc. Nos. 283, 283-1, 283-4.) Specifically, Defendants seek the costs of: (1) fees for the court reporter for the transcripts necessarily obtained for use in the case; (2) fees for exemplification and copies of papers necessarily obtained for use in the case; (3) docket fees pursuant to 28 U.S.C. § 1923; and (4) other costs such as deposition transcripts and transcripts of pretrial conferences. (Doc. No. 283-4.) In this district, "[c]osts will not be taxed during the pendency of any appeal, motion for reconsideration, or motion for a new trial." Local Civil Rule 54.1(a). Here, Plaintiff has already filed his notice of appeal from the Court's judgment (Doc. No. 284), which has been stayed pending the outcome of his Rule 59 Motion and Defendants' Rule 50(b)

motion (Doc. No. 293). Accordingly, the Court denies Defendants' motion for an order granting fees and costs without prejudice to renewal after Plaintiff's appeal is decided. *See Shapiro v. Kronfeld*, No. 00-cv-6286 (KRW), 2005 WL 183137, at *3 (S.D.N.Y. Jan. 27, 2005) (denying without prejudice to renewal motion for taxation of fees brought during pendency of appeal); *see also Menghi v. Hart*, 745 F. Supp. 2d 89, 114 (E.D.N.Y. 2010) (same), *aff'd*, 478 F. App'x 716 (2d Cir. 2012). Defendants may renew their motion within thirty (30) days after the final disposition of Plaintiff's appeal.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants' Rule 50(b) motion and Plaintiff's Rule 59 motion are denied. The Clerk is respectfully directed to terminate the motions pending at docket numbers 264 and 286 in 10-cv-822, to terminate the motion pending at docket number 198 in 10-cv-5355, and to close both of these cases. The Clerk is also respectfully directed to mail a copy of this order to Plaintiff.

SO ORDERED.

Dated:     July 29, 2016
           New York, New York

RICHARD J. SULLIVAN
UNITED STATES DISTRICT JUDGE

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __7/29/16__